[Crim. No. 910.   Third Appellate District.—March 6, 1926.]

THE PEOPLE, Respondent, v. J. H. MARTENSEN, Appellant.

[1] CRIMINAL LAW—RESISTING PUBLIC OFFICER—VIOLATION OF MOTOR VEHICLE ACT—EVIDENCE.—An automobilist is guilty of the offense of resisting a public officer, as defined by section 148 of the Penal Code, where such automobilist pushed the officer off the running-board of his machine while the officer (who caused the machine to stop for exceeding the speed limit) was attempting to get information from the automobilist as to his identity as required by section 154 of the Motor Vehicle Act, and after the officer told the automobilist that he was going to place the latter under arrest; and whether the automobilist was thereafter arrested upon a proper charge is immaterial, since the officer was resisted at the time when he was attempting to discharge the duty imposed upon him by law.

(1) 29 Cyc., p. 1331, n. 45.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. H. L. Preston, Judge. Affirmed.

1.  Resisting officer, note, 3 A. L. R. 1290.

The facts are stated in the opinion of the court.

Lilburn I. Gibson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was convicted in the superior court of Mendocino County of the crime of resisting a public officer and was sentenced to pay a fine of $350 and also to be imprisoned in the county jail of the county of Mendocino for the period of thirty days. Defendant appeals from the judgment and also from the order denying his motion for a new trial. The record shows that on or about the eighteenth day of September, 1925, in the county of Mendocino, the defendant was traveling in an automobile along a certain public highway in the county of Mendocino at a speed exceeding forty-five miles an hour; that two officers of the motor vehicle department of the state of California, M. Holden and E. V. Pettis, observing the excessive rate of speed at which the defendant was traveling, in the performance of their duty as such officers, trailed the defendant for something like half a mile, and finally overtook the defendant and required him to stop his automobile. It further appears that the officers were also traveling in an automobile. As soon as the officers had succeeded in stopping the defendant, Mr. Holden got out of the automobile in which he and Pettis were traveling and walked over to the automobile driven by the defendant. It appears also that the officers were dressed in uniform and wearing their badges of office. Upon walking over to the automobile occupied by the defendant, Mr. Holden asked the defendant for his operator's license and told the defendant he was exceeding the speed limit. The defendant refused to exhibit to the officer his operator's card. Mr. Holden asked the defendant his name. The defendant refused to disclose his name, or in any manner to reveal his identity. The officer testified in this particular as follows: "I tried to get some information in every way I could, who he was, and when I could not I told him I would place him under arrest." It appears the defendant started his motor three times in order to get away from the officers, that the third time the defendant

started his motor Mr. Holden stepped on the running-board and reached over into the automobile, turned the. ignition switch, stopping the motor. The defendant thereupon pushed the officer off the running-board. This occurred after the officer had told the defendant that he was going to place him under arrest. After these occurrences the officers did take actual custody of the defendant and took him to the town of Ukiah, where a formal charge of speeding was placed against the defendant and also a charge of resisting an officer.

[1] It is contended upon this appeal that at the time the defendant pushed the officer from the running-board he was not attempting to resist the officer for an offense set forth in the Motor Vehicle Act or for any offense mentioned in the Penal Code of this state. This contention is based upon certain testimony given by Mr. Holden upon the preliminary examination of the defendant held on the charge of resisting an officer. This testimony is set out in the cross-examination of the witness Holden after he had testified upon direct examination that he was proceeding to arrest the defendant on a charge of speeding. These questions and answers given by the witness Holden upon the preliminary examination of the defendant are as follows: "Q. If he had told you (referring to the defendant) who he was you wouldn't have arrested him on the speeding charge? A. No, sir, I would have given him a written warning. Q. What caused you to place him under arrest? A. For the simple reason he refused to give me identification. Q. You didn't arrest him for resisting an officer out there? A. I placed him under arrest. Q. On what charge? A. I wanted to see who he was and what he was. Q. You arrested him on no charge out there? A. I said I arrested the man upon his refusing to furnish identification. Q. Is that what you arrested him for? A. At that time I placed him under arrest for that, and then he illegally started the motor and tried to get away and I reached in and turned off his switch, I did that three times and the last time he shoved me off the running-board. Q. That was before you placed him under arrest? A. I placed him under arrest before that; he made two more attempts before that—before he shoved me off the car, and it was before that I placed him under arrest when he didn't give me the identification I asked for.

Q. Did you arrest him for any other charge that day, than the speeding charge? A. Yes. Q. Just one charge you arrested him for out there? A. Yes. Q. What did you arrest him for, speeding or resisting an officer? A. I arrested him for identification, when I told him he was under arrest. Q. You didn't arrest him on either charge, either of speeding or resisting an officer, you arrested him because he wouldn't give any identification? A. At that time, yes, sir.''

Section 148 of the Penal Code reads: ''Every person who wilfully resists, delays, or obstructs any public officer, in the discharge or attempt to discharge any duty of his office, when no other punishment is prescribed, is punishable by fine not exceeding five thousand dollars, and imprisonment in the county jail not exceeding five years.''

By reference to section 154 of the Motor Vehicle Act of the state of California, as amended in 1925 [Stats. 1925, p. 415], and which section was in full force and effect on the eighteenth day of September, 1925, it will appear that the contention of the defendant upon this appeal is founded upon a misapprehension of the law relating to arrests for violations of the Motor Vehicle Act. By that section of the Motor Vehicle Act it is provided that in all cases, except for offenses constituting a felony, the arresting officer shall proceed in the following manner, after having stopped the person whom he knows to be guilty of violating the speed laws: The arresting officer shall, upon the production of the operator's license of the person arrested or from other satisfactory evidence of his identity, take the name and address of such person, the number of his motor vehicle, and notify him in writing to appear at a time and place to be specified in such notice, or, upon demand of the person arrested, take him immediately before some magistrate. It is further provided that whenever any such person refuses to give his written promise to appear or demands appearance, he shall be forthwith taken before a magistrate, etc. Referring to section 148 of the Penal Code, we find that it specifies that any person who wilfully refuses, delays, or obstructs a public officer in the discharge or attempt to discharge any duties of his office, etc., is punishable, etc. Under any view of the evidence in this case, the officer was attempting to discharge the duties of his office. He had already actual knowledge of the violation of the Motor Vehicle Act

by the defendant in traveling at a speed in excess of forty-five miles per hour, which violation is not contested, and he was proceeding according to section 154 of the Motor Vehicle Act to ascertain the facts necessary to give the defendant the proper notice to appear and answer the charge of speeding, and while he was discharging and attempting to discharge this duty of his office, the defendant pushed him from the running-board and endeavored in this way to prevent the officer acquiring the information and performing his duty according to the section of the Motor Vehicle Act to which we have referred. Whether the defendant was thereafter arrested upon a proper charge is immaterial, for it appears beyond question that the officer was resisted at the time when he was attempting to discharge the duty imposed upon him by law.

The order and judgment of the trial court are affirmed.

Hart, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 3, 1926, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 3, 1926.