[Crim. No. 267. Fourth Appellate District.—July 30, 1934.]

THE PEOPLE, Respondent, v. SAM MAGGIO et al., Appellants.

THE PEOPLE, Respondent, v. ANTONIO FIORE, Appellant.

A. C. Finney and Edgar B. Hervey for Appellants.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

BARNARD, P. J. — The defendant Sam Maggio was charged with the crime of assault with a deadly weapon and all three defendants were separately charged with the crime of resisting an officer. Two informations with various counts were filed. All of the charges grew out of the arrest or attempted arrest of Sam Maggio by a game warden and, by consent, the two cases were consolidated for trial and have been consolidated and briefed together on this appeal. The defendant Sam Maggio was found guilty of assault with

a deadly weapon and all three defendants were found guilty of resisting an officer. In pronouncing judgment a fine was imposed upon each defendant, and all three have appealed.

The first point raised is that the respective informations, in so far as they attempted to charge each of the appellants with the crime of resisting an officer, were insufficient and failed to charge such an offense. These informations, respectively, alleged that the defendant named therein did on or about a certain date in the county of Imperial wilfully, unlawfully and feloniously resist, delay and obstruct a public officer, to wit, J. W. Harbuck, in the discharge of, or attempt to discharge, his duties as such public officer. It was further alleged that the said Harbuck was a deputy state game warden and a deputy federal game warden; that he was then and there duly appointed, qualified and acting as such; and that he was then and there engaged as such public officer in arresting the defendant Sam Maggio, who was then and there wilfully and unlawfully committing a misdemeanor in violation of the law. It is claimed that these informations are insufficient in that the officer referred to therein should have been called a deputy fish and game commissioner rather than a deputy state game warden; that it does not appear from the information that said officer was engaged in discharging or attempting to discharge the duties of his office at the time the resistance was made; and that the informations fail to set forth what misdemeanor was being committed at the time by the said Sam Maggio. Even under the stricter rules of pleading which formerly prevailed the third of these contentions would have been held to be without merit. (*People* v. *Hunt*, 120 Cal. 281 [52 Pac. 658].) With respect to the second contention the essential fact is alleged not only in the language of the statute but with sufficient clarity to be readily understood by anyone. As to the first of these contentions, no authority is cited for the proposition that the correct name for the position held by the officer in question is deputy fish and game commissioner. Such officers have long been known as game wardens. There was evidence that this officer was commonly so designated and no possible prejudice could have resulted to the appellants if, in fact, there was any error in the designation. The informations in question followed the language of the stat-

ute, which was sufficient in a case of this kind. ■ No demurrer or motion to set aside the information was filed and these particular objections were thereby waived. (Pen. Code, secs. 1004 and 1012.) The informations conform to the provisions of sections 950, 951, 952, 955 and 959 of the Penal Code and, in view of the provisions of section 960 of the Penal Code and section 4½ of article VI of the Constitution, no defects are pointed out which can be held sufficient to justify a reversal.

■ It is next urged that the evidence is insufficient to support the conviction of the appellants Fiore and Paul Maggio, in that it does not disclose any interference by them with the arrest or the attempted arrest of Sam Maggio. This requires a brief summary of the evidence relating to the situation out of which these cases arose.

On September 24, 1933, the three appellants, with two others, were hunting ducks in Imperial County. The game warden referred to, who was at that time unarmed, approached Sam Maggio, told him he was a game warden, showed him his badge and asked to see his license. Sam told him he had left his license at home and, in response to another inquiry, told him that he had bought his license at the courthouse on September 2d, which statement was disproved at the trial. Upon being asked his name Sam said his name was "Anthony Pecoria" and spelled out the last name for the warden, who wrote it on a piece of cardboard. While they were talking the warden saw a man some distance away whom he later identified as Paul Maggio. This man fired two shots and a flock of ducks arose from a pond and passed near the point where Sam and the warden were standing. Sam raised his gun and fired, hitting one duck which fell to the ground. The warden placed his hand on Sam's shoulder and told him he was under arrest and asked him to give him the gun. Sam refused and the two started scuffling for possession of the gun and both fell to the ground. While the warden was lying on the ground on top of the gun Sam started striking him on the head with his fists. When the warden started to move to protect himself Sam grabbed the gun, jumped up and, after calling the warden a vile name, said: "You want my gun, here it is. You like it?" Thereupon Sam struck the warden under the right eye and again behind the left ear with the double-

barreled shotgun. The first blow slightly dazed the warden and after striking the second blow Sam left and went over into the brush. The warden went back to his car which was parked near by and, after strapping on his holster in which was a pistol, drove a short distance to where another car, belonging to the appellant Fiore, was parked. In about five minutes all of these hunters, except Sam Maggio, came back to Fiore's car. The warden told them that they could go home but not to go in the direction in which Sam Maggio had vanished, and that the other man was under arrest. Fiore replied to the effect that he would go where he pleased, whereupon the warden told him "You can go home but don't take that man with you. He is under arrest and I am going to bring him in. I will take care of him." Fiore then started his car and drove in the direction in which Sam had gone. After proceeding a few hundred feet he stopped his car and Paul Maggio got out and went into the brush. As the warden came up to the car Paul returned with Sam. Fiore got out of the car and all three appellants talked among themselves in a foreign language, which the warden could not understand. All three appellants then pointed their shotguns directly at the warden and Paul started to walk around behind his back. At that the warden started backing up and Paul said, "Well, what about it?" The warden continued to back up and after saying "He is still under arrest", went to his car and the appellants got in their car and left.

While the appellants denied on the stand that they had pointed their guns at the warden just before Sam got into the car, they admitted that the warden had a badge on at the time, that they knew he was an officer, and that he told them not to pick up the other man as he would take care of him himself. The evidence justifies the inference that the appellants Paul Maggio and Fiore knew all about the scuffle between the warden and Sam Maggio and that the warden had attempted to place Sam under arrest. In any event, after being informed by the officer that Sam was under arrest and after being told not to take him away and that the officer intended to take him away, they not only took him with them but accomplished this purpose through the use of their shotguns in a most persuasive manner. It would be difficult to imagine a plainer case of interference

with an officer in his attempt to perform his duties and the evidence is entirely sufficient to support the verdict of the jury in that regard. (*People* v. *Martensen,* 76 Cal. App. 763 [245 Pac. 1101]; *People* v. *Pedde,* 25 Cal. App. 34 [142 Pac. 894].)

■ The last point urged is that the court erred in its instructions to the jury and that the evidence is insufficient to sustain the verdict, as to Sam Maggio, on the charge of assault with a deadly weapon. It is conceded, however, that the evidence with respect to this charge was conflicting and the only argument presented is as to errors in the instructions. There was ample evidence to the effect that Sam Maggio struck the officer with a double-barreled shotgun used as a club, including the testimony of the doctor who examined the officer on the same day, who testified as to the nature of the wounds and that they had the appearance of having been caused by a blunt instrument. One instruction given by the court was as follows: "You are instructed that every person who commits an assault upon the person of another with a deadly weapon or instrument or by means of force likely to produce great bodily injury is guilty of the offense of assault with a deadly weapon."

While the appellants concede that this instruction was correct in itself, it is claimed to be erroneous when taken in connection with another instruction, reading as follows: "You are instructed that the definition of 'deadly weapon' as given by our laws includes any weapon commonly known as a pistol, revolver or any other firearm."

It is argued that these two instructions had the effect of telling the jury that the manner of use or the amount of force employed with the weapon was immaterial. The court also gave the following instructions:

"A deadly weapon is one likely to produce death or great bodily injury."

"The jury are the judges as to whether the weapon used in the affray was or was not a deadly weapon."

"An assault is an unlawful attempt coupled with the present ability to commit a violent injury on the person of another."

■ It is well settled that all of the instructions given in a case should be considered together, as a whole. It is not practicable to put all of the law in one instruction and where

each instruction is correct and all taken together plainly state the law so that the jury may understand what is meant, a defendant is not prejudiced. (*People* v. *Quimby,* 6 Cal. App. 482 [92 Pac. 493].) Most of these instructions followed corresponding statutes and, taken together, sufficiently defined the terms so that the jury might decide whether the weapon here employed, used in the manner in which it was used, constituted a deadly weapon. This question was left to the jury as was also the question as to whether an assault was in fact made by Sam Maggio upon the complaining witness. ■ Another instruction given was as follows:

"You are instructed that if you believe from the evidence, beyond a reasonable doubt, that the defendant Sam Maggio, on or about the 24th day of September, 1933, struck and hit the said J. W. Harbuck with a shotgun with the intent then and there to assault the said J. W. Harbuck, then your verdict should be guilty of Assault with a Deadly Weapon as charged in the information."

This instruction is attacked as telling the jury that a shotgun is a deadly weapon *per se* and that an assault with a shotgun is an assault with a deadly weapon irrespective of the amount of force used in the assault. In other instructions the necessary elements of the crime were fully defined and the jurors were specifically told that they were the judges as to whether the weapon used was or was not a deadly weapon. It is not reasonable to think that the jury could have understood these instructions in any other light than that they were to determine whether the weapon here used was a deadly weapon under the circumstances and in the manner in which it was here used, as shown by the evidence. The instruction last quoted left to the jury the question as to whether Sam Maggio struck and hit the complaining witness with a shotgun and also left to the jury the question whether any such act was done with the intent then and there to assault the complaining witness. We think the instructions, taken together, were sufficient to inform the jury as to the law upon the subject and that no possible error therein could account for the result. A reading of the record fails to convince us that any miscarriage of justice has occurred.

The judgments and orders denying motions for a new trial are and each of them is affirmed.

Jennings, J., concurred.

Marks, J., being absent, did not participate herein.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 29, 1934.