[Crim. No. 44718. Second Dist., Div. Seven. May 7, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MELCHOR OLMEDO, Defendant and Appellant.

COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Therene Powell, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—Defendant, Melchor Olmedo, appeals from a judgment entered following a jury trial in which he was convicted of two counts of assault with a deadly weapon and by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)). The alleged victim in count I is Grady Worthy, and the alleged victim in count II is Michael Davis. Defendant was sentenced to state prison for the middle base of three years on count II, and a consecutive sentence of one year on count I, making a total sentence of four years.

The issues on appeal are: (1) whether the trial court committed prejudicial error in instructing the jury on aiding and abetting; (2) whether the prior conviction of assault with the intent to commit murder involves "readiness to do evil"—i.e., moral turpitude; and (3) whether the trial court committed prejudicial error in taking the position it had no discretion to exclude the use of a prior conviction for impeachment purposes.[1]

For reasons to follow, we conclude that the judgment convicting defendant of two counts of assault with a deadly weapon and by means of force likely to produce great bodily injury must be reversed because the jury did not receive instructions on the requisite intent of an aider and abettor. We also conclude that defendant's prior conviction of assault with the intent to commit murder necessarily involves moral turpitude and therefore can be

---

[1]During the course of the trial, the trial court denied defendant's motion to bar his impeachment with a recent prior conviction of assault with intent to commit murder (Pen. Code, § 217, repealed eff. Jan. 1, 1981 [Stats. 1980, ch. 300, §§ 1, 2, p. 628]). The court based its ruling on article I, section 28, subdivision (f) of the California Constitution, concluding that it had no discretion under Evidence Code section 352 to exclude evidence of the prior conviction. The defendant did not testify. Since the defendant raised the use of his prior conviction as a issue on appeal, we requested briefing from the parties on the recent decision of our Supreme Court in *People v. Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], dealing with the use of prior convictions for impeachment purposes in criminal cases under the so-called Victims' Bill of Rights (Prop. 8) enacted in June 1982.

used for impeachment purposes, subject to the trial court's discretion under Evidence Code section 352. We find therefore that the trial court erred in taking the position it had no discretion with respect to defendant's prior conviction. We need not determine, however, whether this error is prejudicial since we must reverse because of prejudicial instructional error.

### FACTS

Viewed in the light most favorable to the judgment, the record reveals that at trial the People proceeded against defendant on the theory that he was either one of the attackers, or aided and abetted the attacks on Worthy and Davis.

On Sunday evening, September 5, 1982, Grady Worthy and Terry Sealey were drinking beer and playing a game of pool at Scotchman's Bar, while their friend, Alex Nisi, watched the game. When Sealey left the game to go to the rest room, a man came up to the pool table with a pool cue and started to shoot the balls on the table. Worthy said, "Excuse me, sir. This table is taken. We are shooting pool here." The man asked Worthy what he had said, to which Worthy responded, "We are shooting pool here."

At this point, the defendant, together with several other men, approached Worthy and said repeatedly, "Nobody disrespects my brother." After these men moved away from the table, Worthy, Nisi, and Sealey discussed leaving the bar, but decided to finish their drinks and the pool game, which they did. Thereafter, they left the bar.

After taking Sealey to her car on the parking lot next to the bar, Worthy and Nisi headed toward Nisi's car, but were confronted by six to eight men, including defendant and his brother, before they reached the car.

From this point, the witnesses of the People offered different pictures of the facts. Worthy's version of the events, which followed the encounter, differs from Nisi's and Sealey's.

According to Worthy's testimony, these men were armed with pool cues and beer bottles. Shortly, a fight started, when a heavy-set man ran from this group and struck Worthy on the shoulder. When Worthy hit this large man, the whole group came at him. Defendant struck him once with a pool cue. Defendant's brother hit him with a beer bottle. The other men hit Worthy many times.

During a lull in the fighting, Michael Davis ran to Worthy, and asked him what was wrong. Before Worthy could speak to him, Worthy was

knocked down, kicked, and hit with pool cues and beer bottles. While he was down, he saw defendant grab Nisi and put a choke hold around her neck. However, when he got to his feet, defendant had released Nisi.

Worthy further testified that he saw several of the men, including defendant, run toward Davis. He saw defendant begin hitting Davis with his fist. He also saw defendant swinging a broken pool cue. But he did not see defendant hit Davis with it. Worthy ran over to help Davis, knocking one of the men down. The other men ran away.

According to Nisi and Sealey, as soon as the fight began, defendant grabbed Nisi by the neck. Nisi never saw defendant approach Worthy. Sealey testified that she did see defendant in the group around Worthy, but not at the beginning of the fight. Neither Nisi nor Sealey remembered seeing defendant with a weapon.

At the beginning of the confrontation between Worthy and the men in the parking lot, Michael Davis was in Bo-Jay's restaurant located next to Scotchman's Bar. He testified that he heard some commotion outside. He went outside to lock his car and saw several men standing around Worthy. He shouted that the police were coming and told the men they would get in trouble if they did not leave. When the fight started, some of the men ran towards him. He started to run back to the restaurant. But before he could get to the restaurant, someone hit him on the shoulder with a pool cue. Thereafter, he managed to get to the front door of the restaurant. At this point, someone hit him on the forehead with a pool cue, knocking him down. He was then kicked and punched. However, everything happened so quickly that he was unable to distinguish faces or be sure defendant was among his assailants.

Defendant presented the defense of alibi through one witness who testified that, on the Labor Day weekend of 1982, defendant was visiting a friend in Kern County. Defendant did not testify.

The jury in this case was instructed on aiding and abetting under a modified form of CALJIC No. 3.00 (1981 rev.) as follows: "The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who, with knowledge of the unlawful purpose of the person who directly and actively commits the crime, aid and abet in its commission." The jury was also instructed under a modified form of CALJIC No. 3.01 (1980 rev.) as follows: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime,

he aids, promotes, encourages or instigates by act or advice the commission of such crime."

DISCUSSION

I

INSTRUCTIONAL ERROR

Subsequent to defendant's conviction in this case, our Supreme Court handed down its decision in *People v. Beeman* (1984) 35 Cal.3d 547 [199 Cal.Rptr. 60, 674 P.2d 1318], holding that CALJIC No. 3.01, given in the case at bench, erroneously defines aiding and abetting by failing to adequately inform the jury of the criminal intent required to convict a defendant as an aider and abettor of the crime. Later, our Supreme Court in *People v. Caldwell* (1984) 36 Cal.3d 210 [203 Cal.Rptr. 433, 681 P.2d 274], based on its holding in *Beeman,* held CALJIC No. 3.00, also given in the instant case, defective in failing to correctly inform the jury of the requisite intent for aiding and abetting.

A. *Retroactivity of Beeman*

■ The People argue that, under the guidelines set forth in *Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 36-37 [196 Cal.Rptr. 704, 672 P.2d 110], the *Beeman* holding should not be retroactively applied to the instant case because the *Beeman* court only disapproved a *practice* which the California Supreme Court had arguably sanctioned in *People v. Terry* (1970) 2 Cal.3d 362, 401 [85 Cal.Rptr. 409, 466 P.2d 961]. We do not agree.

Recently, in *People v. Minichilli* (1984) 161 Cal.App.3d 660, 669 [207 Cal.Rptr. 766], hearing denied Feb. 14, 1985, the appellate court held that *Beeman* should be retroactively applied. There the appellate court observed that *Beeman* "resolves conflict in appellate opinions between those cases finding *knowledge* of the perpetrator's criminal purpose sufficient [citations] and those cases requiring *intent* to support a conviction upon aiding and abetting [citations]. . . ." (*Id.,* at p. 670; italics in original.)

We conclude that, since *Beeman* did resolve this conflict in the lower court opinions (35 Cal.3d at p. 558), "the ordinary assumption of retrospective operation. . . takes full effect." (*Donaldson v. Superior Court, supra,* 35 Cal.3d at p. 37; also see *People v. Minichilli, supra,* 161 Cal.App.3d at p. 670.) In fact, our Supreme Court in *People v. Caldwell, supra,* 36 Cal.3d at pages 223-224, retroactively applied *Beeman* without specifically discussing the issue of retroactivity.

We hold therefore that the *Caldwell* and *Beeman* decisions, holding that CALJIC Nos. 3.00 and 3.01 are defective in failing to adequately apprise the jury of the requisite intent for an aider and abettor, apply in the instant case.

### B. *Standard of Prejudice*

The *Beeman* court concluded that, under the *Watson* standard, the instructional error there required a reversal and therefore refused to "decide whether failure to correctly instruct on the element of criminal intent should as a general rule be reviewed under a stricter rule of harmless error." (35 Cal.3d at p. 563.) Thus, *Beeman* left open the question of the standard of prejudice applicable in cases involving failure to instruct on the requisite intent of an aider and abettor.

Defendant contends that the *Beeman* error in the instant case mandates a reversal. On the other hand, the People argue that, if the *Beeman* holding is retroactively applied to the instant case, the error is governed either by the standard of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], or the constitutional standard of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].

We have concluded, as did our Supreme Court in *People* v. *Garcia* (1984) 36 Cal.3d 539, 549-550 [205 Cal.Rptr. 265, 684 P.2d 826], in an analogous situation, that this case is controlled by a line of United States Supreme Court decisions beginning with *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], and continuing through *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450], and *Connecticut* v. *Johnson* (1983) 460 U.S. 73 [74 L.Ed.2d 823, 103 S.Ct. 969].

In applying these decisions, the *Garcia* court explained: "The United States Supreme Court decisions make it clear that when intent is an element of a crime, an instruction directing the jury to find or conclusively presume intent denies due process, regardless of the weight of the evidence. An instruction putting the burden of proof on the defendant is equally infirm. The reasoning of the opinions, however, goes beyond inquiry into presumptions, burden of proof, and other procedural analogs to a directed verdict. That reasoning would invalidate any instruction or failure to instruct which would permit the state to circumvent the requirement that it prove every fact necessary for conviction beyond a reasonable doubt. [Citation.] Thus a failure to instruct on the element of intent, because it would permit the jury to find guilt without proof of intent beyond a reasonable doubt, would constitute a denial of due process." (36 Cal.3d at p. 551.)

 Following this careful analysis, the *Garcia* court concluded the failure to instruct on intent required reversal in all cases unless certain exceptions were present. (36 Cal.3d at pp. 549-558; also, see *People* v. *Acero* (1984) 161 Cal.App.3d 217, 228 [208 Cal.Rptr. 565], hg. den. Jan. 3, 1985.) Later, in *People* v. *Ramos* (1984) 37 Cal.3d 136, 146-147 [207 Cal.Rptr. 800, 689 P.2d 430], our Supreme Court summarized the *Garcia* exceptions as follows: "(1) ' "[I]f the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no bearing on the offense for which he was convicted," ' [citation], (2) ' "if the defendant conceded the issue of intent" ' [citation], (3) if ' "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions" ' [citation], or (4) under limited circumstances, if 'the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration.' [Citations.]"

Although the test of prejudice for *Sandstrom* error is yet to be formulated because the United States Supreme Court in *Connecticut* v. *Johnson, supra,* 460 U.S. 73 [74 L.Ed.2d 823], divided evenly, we conclude, as the *Garcia* court did in a comparable situation, that the United States Supreme Court would find the error in the present case reversible per se. (36 Cal.3d at p. 554.) Moreover, a number of California cases, without relying on federal authority to frame a test of prejudice, hold that failure to instruct on the elements of a crime, a lesser included offense, or an affirmative defense constitutes a denial of the constitutional right to jury trial, resulting in prejudice per se. (See, e.g., *People* v. *Mayberry* (1975) 15 Cal.3d 143, 157-158 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].)

 In addition, our examination of the record in the instant case discloses that none of the *Garcia* exceptions apply. First, although the defendant's primary defense was alibi, he did not concede that, if the jury found that he was present, it would be bound to conclude that he had committed the charged crimes. The record reflects the contrary. During closing argument, his attorney emphasized that the prosecution was required to prove beyond a reasonable doubt not only that the crimes had been committed but that defendant committed them.[2] Second, there is no other properly given

---

[2]We find the recent case of *People* v. *Loud* (1985) 165 Cal.App.3d 672 [212 Cal.Rptr. 20], is not applicable here. There, defense counsel had conceded in argument to the jury that a robbery had occurred, but that the case was simply one of misidentification. The appellate court held that the defendant had effectively taken the issue of intent from the jury, by admitting that the robbery had occurred, and by conceding that the aider and abettor had the requisite intent. (*Id.,* at p. 679.)

instruction in the instant case under which the jury could have necessarily resolved the question of intent omitted by the erroneous instructions. Finally, we are unable to say as a matter of law from the evidence in this case that the necessary intent was established.

More important, even if the evidence supports the judgment of conviction on a direct perpetration theory, the facts of this case establish reversible error. The record shows that the People proceeded against defendant on the theory that he was either one of the attackers, or aided and abetted the attacks on Worthy and Davis.

In closing argument to the jury, the prosecutor stated: "Each of [the prosecution witnesses] testified as to the defendant being present at one particular stage or another, and for purposes of this case, it really isn't important whether or not defendant himself was the first person out of the pack and struck Mr. Worthy, whether he was one who came after the heavy-set man and struck Mr. Worthy with a pool cue, whether he had no weapon at all and never struck Mr. Worthy but was there in the group interacting with that group. That's not important, because *you are going to get an instruction in this case on principals and aiding and abetting, and I think that's going to be one of the key instructions in helping you narrow down and put away this kind of issue* because, truly, if the defendant was acting in concert with the other persons in that group, whether he advised or encouraged or aided and abetted in the commission of that offense, he's as guilty as if he simply—if he were the one who held the pool cue and did all of the beating while others stood by and watched . . . ." (Italics added.)

At bench, the jury returned a general verdict which did not state that direct perpetration, rather than aiding and abetting, was the theory relied on for conviction. ■ As our Supreme Court in *People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], stated: "In these circumstances the governing rule on appeal is both settled and clear: when the prosecution presents its case to the jury on alternate theories, some of which are legally correct, and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (See, e.g., *People* v. *Birreuta* (1984) 162 Cal.App.3d 454, 462 [208 Cal.Rptr. 635]; *People* v. *Martinez* (1984) 150 Cal.App.3d 579, 603 [198 Cal.Rptr. 565]; also, see *Leary* v. *United States* (1969) 395 U.S. 6, 31-32 [23 L.Ed.2d 57, 78-79, 89 S.Ct. 1532].)

Accordingly, we conclude reversal is required here.

## II

### USE OF PRIOR CONVICTION TO IMPEACH

We are concerned here with the effect, if any, of subdivisions (d)[3] and (f)[4] of section 28 of article I of the California Constitution, enacted in June 1982 as part of the so-called Victims' Bill of Rights (Prop. 8), on the use of prior felony convictions to impeach in a criminal case.

In the recent case of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], our Supreme Court was called upon to construe subdivisions (d) and (f) as they relate to the use of prior felony convictions to impeach a witness, including the defendant, in a criminal case. In its decision, Justice Kaus writing for the court reached two fundamental conclusions, with which Justices Mosk and Broussard concurred. Chief Justice Bird, together with Justice Reynoso, separately concurred in the first conclusion, and Justice Grodin separately concurred in the second conclusion.

First, the *Castro* court held that section 28, subdivision (f), did not abrogate the holding in *People* v. *Beagle* (1972) 6 Cal.3d 441, 451-454 [99 Cal.Rptr. 313, 492 P.2d 1], that a trial court has discretion pursuant to Evidence Code sections 352 and 788 to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice. (38 Cal.3d at pp. 306-307.) Also, a trial court *may* still consider the *Beagle* guidelines in exercising its discretion—namely, (1) whether the prior conviction reflects on honesty and integrity; (2) whether it is near or remote in time; (3) whether it was suffered for the same or substantially similar conduct for which the witness-accused is on trial; and, (4) finally, what effect admission would have on the defendant's decision to testify. (*Ibid.*)

In reaching the first fundamental conclusion, the *Castro* court stated: "The legislative and judicial history of sections 352 and 788, the circum-

---

[3]Subdivision (d) provides: "Except as provided by Statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court. Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103. Nothing in this section shall affect any existing statutory or constitutional right of the press."

[4]Subdivision (f) provides: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

stances under which article I, section 28, was enacted, the language of the enactment—concededly ambiguous—as well as certain policy considerations convince us that section 28 was not intended to abrogate the traditional and inherent power of the trial court to control the admission of evidence by the exercise of discretion to exclude marginally relevant but prejudicial matter—as, indeed, is provided by Evidence Code section 352. [Fn. omitted.]" (38 Cal.3d at p. 306.) Rather, the *Castro* court reasoned, subdivision (f) was intended to, and did abrogate the part of those cases, starting with *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], which had construed the *Beagle* guidelines as rigid limitations on the discretion of the trial court. The *Castro* court called this series of cases "the *Antick* line of cases." (38 Cal.3d at p. 308.) After *Antick,* they are *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *Rollo* (1977) 20 Cal.3d 109 [141 Cal.Rptr. 177, 569 P.2d 771]; *People* v. *Woodard* (1979) 23 Cal.3d 329 [52 Cal.Rptr. 536, 590 P.2d 391]; *People* v. *Fries* (1979) 24 Cal.3d 222 [155 Cal.Rptr. 194, 594 P.2d 19]; and *People* v. *Spearman* (1979) 25 Cal.3d 107 [157 Cal.Rptr. 883, 599 P.2d 74]. (38 Cal.3d at pp. 307-308.) On this point, the *Castro* court stated: "The intention of the drafters of the initiative was to restore trial court discretion as visualized by the Evidence Code and to reject the rigid, black letter rules of exclusion which we had grafted onto the code by the *Antick* line of decisions." (38 Cal.3d at p. 312.)

▮ Second, the *Castro* court held that, subject to the trial court's discretion to exclude evidence under Evidence Code section 352, any prior felony conviction may be used in a criminal case to impeach a witness, including the defendant, so long as the prior felony conviction necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. (38 Cal.3d at pp. 313-316.)

In arriving at this second fundamental conclusion, the *Castro* court first recognized that the phrase "without limitation" contained in subdivision (f) in connection with the use of "any" prior conviction to impeach is not without limitation. The court noted that, although it could safely ignore section 350 of the Evidence Code,[5] due to the state constitutional nature of subdivision (f), it could not ignore the due process clause of the Fourteenth Amendment. The due process clause requires " 'that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence.' " (38 Cal.3d at p. 313.) Next, the *Castro* court reasoned that in order for a prior felony conviction to have constitutional relevance there *must be a rational connection* between the fact proved (i.e., prior felony

---

[5]Section 350 of the Evidence Code provides: "No evidence is admissible except relevant evidence."

conviction) and the fact to be inferred (i.e., readiness to lie—the trait of dishonesty). The court determined this connection to be the general readiness to do evil, which the court called moral turpitude. From this premise, the court stated: "It follows, therefore, that if the felony of which the witness has been convicted does not show a 'readiness to do evil,' the fact of conviction simply will not support an inference of readiness to lie." (38 Cal.3d at p. 314.) Thereafter, in summary, the court concluded: "There is then some basis—however tenuous—for inferring that a person who has committed a crime which involves moral turpitude other than dishonesty is more likely to be dishonest than a witness about whom no such thing is known. [Fn. omitted.]" (38 Cal.3d at p. 315.)

### A. *Assault With Intent to Murder Involves Moral Turpitude*

Realizing that under *Castro* it will be necessary to determine whether the felony conviction offered for impeachment does or does not involve moral turpitude (*Castro,* 38 Cal.3d at p. 316), we are here concerned with providing guidance to the trial court upon the retrial of this case.

In the recent case of *Henry H.* v. *Board of Pension Comrs.* (1983) 149 Cal.App.3d 965, 975-976 [197 Cal.Rptr. 636], we considered the concept of moral turpitude. There we stated: "The elusive concept of 'moral turpitude' has long been the subject of judicial scrutiny. [Citation.] Our Supreme Court has recognized that juristic definitions of moral turpitude have been general. [Citation.] California courts have dealt with the amorphous term in various factual contexts, mainly involving disciplinary proceedings. [Citations.] [¶] For almost half a century our Supreme Court has consistently defined moral turpitude as 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Citations.] [¶] Despite its frequency of use, the concept by nature defies any attempt at a more precise definition. [Citation.] Moral turpitude is innately a relative concept, dependent on contemporary moral values as well as the motivation of the violator and the degree of its inimical quality. [Citations.] [Fn. omitted.]"

However, in order to determine whether the prior felony conviction involves moral turpitude, the trial court is not allowed to go behind the fact of the conviction and receive evidence on the underlying facts such as is done in disciplinary actions against attorneys. (See, e.g., *In re Strick* (1983) 34 Cal.3d 891, 897 [196 Cal.Rptr. 509, 671 P.2d 1251].) Rather, the trial court in a criminal case must determine whether a prior felony conviction involves moral turpitude from "the least adjudicated elements of the conviction . . . ." (*Castro, supra,* 38 Cal.3d at p. 317.)

In the instant case, the prosecutor intended to impeach the defendant with a prior conviction of assault with intent to commit murder. This crime is a form of attempted murder. (See *People* v. *Montano* (1979) 96 Cal.App.3d 221, 225 [158 Cal.Rptr. 47].) As described in *People* v. *Heffington* (1973) 32 Cal.App.3d 1, 11 [107 Cal.Rptr. 859], "[t]he crime of assault with intent to commit murder requires proof of a specific intent to murder, but without regard to any distinction between first and second degree murder." Thus, it cannot be seriously doubted that this crime necessarily involves moral turpitude. (See *In re Kirschke* (1976) 16 Cal.3d 902, 903 [129 Cal.Rptr. 780, 549 P.2d 548].) Just as the *Castro* court determined that possession of heroin for sale does involve moral turpitude—though the trait involved is not dishonesty but, rather, the intent to corrupt others (*Castro, supra,* 38 Cal.3d at p. 317), we find no difficulty in characterizing the specific intent to murder as "immoral." We conclude therefore that assault with intent to murder involves moral turpitude.

Since we shall reverse on other grounds, we find it unnecessary to reach defendant's other contentions, or to determine whether the court trial's error in taking the position that it had no discretion under Evidence Code section 352 with respect to defendant's prior felony conviction requires reversal. (See *People* v. *Barrick* (1982) 33 Cal.3d 115, 130 [187 Cal.Rptr. 716, 654 P.2d 1243].)

Accordingly, the judgment is reversed.

Lillie, P. J., and Johnson, J., concurred.