[No. B019756. Second Dist., Div. Three. Oct. 8, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
PATRICIA RUTH OLSEN, Defendant and Appellant.

258

**COUNSEL**

Frank Ponce for Defendant and Appellant.

Ira Reiner, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

Following a trial by jury in the Whittier Municipal Court, defendant and appellant Patricia Ruth Olsen (appellant), was convicted of interfering with the lawful efforts of a fireman, firemen, or emergency rescue personnel in the discharge of official duty (Pen. Code, § 148.2, subd. 1, count I) and disobeying the lawful order of a fireman or public officer (Pen. Code, § 148.2, subd. 2, count II), both of which are misdemeanors. Imposition of sentence was suspended and appellant was placed on summary probation for a period of 15 months. She appealed. Pursuant to rule 62(a) of the California Rules of Court, we ordered the case transferred to this Court for hearing and decision.

The issue of first impression presented by this appeal is whether a paramedic employed by a private company is among those persons protected under Penal Code section 148.2. We conclude that he is not and reverse the judgment of the Whittier Municipal court.

FACTS

Viewed in the light most favorable to the judgment as required on appellate review, the evidence presented at trial establishes that on July 6, 1984, sometime before midnight, a traffic accident occurred between a tractor-trailer rig and a Mazda RX-7. As a result of the accident, the Mazda was wedged under the trailer portion of the rig, just behind the back axles.

A few minutes before midnight, Stuart Donald Cumming, a paramedic employed by Aids Medical Enterprises, Inc., received a call and responded with his partner, Daniel Downs. Both Cumming and Downs are certified Los Angeles County Mobile Intensive Care Paramedics.

They arrived at the scene simultaneously with the City of Whittier police. Cumming looked inside the Mazda and saw that the young woman in the driver's seat was pinned underneath the dashboard. She appeared to be suffering from serious injuries. After assessing the situation, Cumming called the Los Angeles County Fire Department which responded with a truck company and extrication equipment.

When they arrived, the firemen began an operation utilizing the "jaws of life" in order to free the woman from the wreckage. Los Angeles County Fire Department paramedics, who also responded to the scene, began to work side by side with Cumming and his partner, Downs, to stabilize and treat the woman.[1]

While the firemen, the police and the paramedics were engaged in the extrication operation and were administering medical care to the woman, two photographers, appellant and her husband, arrived on the scene. Appellant began taking photographs of the accident, using a flash or strobe light. Although she was told by a police officer to stay out of the way, when the injured woman was placed on the gurney, appellant leaned over the gurney to take pictures. She was again admonished by a police officer to step back and out of the way. Appellant responded by stating that she had a right to be there.

During a 10-minute period when further treatment was being administered by Cumming and other paramedics, appellant continually approached the

---

[1]Captain Ronald Rogers of the *County of Los Angeles* fire department testified that usually when fire department paramedics arrive, they assume primary responsibility for providing paramedic services. However, they have no control over private company paramedics. The night of the accident, because there was so much to do, Cumming and Downs continued to treat the victim even after the Los Angeles County Fire Department paramedics arrived.

gurney, at times taking photographs just two to three feet from the woman's upper body.

Appellant was warned repeatedly by fire department personnel and paramedics to move back and to stop interfering. Some of the requests for appellant to move back were made by Paramedic Cumming himself; other times Cumming requested Sergeant Arthur Myers, of the Whittier Police Department, and other police officers, to move her away.[2] After one such request, appellant asked Cumming his name and for whom he worked, stating she was going to complain to his company about his actions.

When Sergeant Myers told appellant for a second time to step out of the way, appellant informed him she was from the press and had a right to be there. Shortly thereafter, Myers again became aware that appellant was causing a problem and again admonished her to keep out of the way. He told appellant she was subject to arrest if she failed to cooperate. Appellant responded by sticking out her hands and telling Sergeant Myers to arrest her. He replied that he did not have the time to take her to jail and did not want to involve other personnel who were also busy.

Officer Mark Jones, of the Whittier Police Department, witnessed appellant's uncooperative behavior at the accident scene, in particular her responses to Paramedic Cumming's and Sergeant Myers' requests to move out of the way and to stop taking pictures.

Later, Officer Jones observed appellant standing in the street and asked her to move onto the curb so that she would not be hit if a tow truck backed up. Appellant again replied that she did not have to move because she had a legal right to be there. Officer Jones informed appellant that if she did not move, she would be subject to arrest. In response, appellant extended her wrists and challenged him to arrest her. Officer Jones replied that he did not want to arrest her, that he simply wanted her to cooperate because they were busy. He then walked away.

Thereafter, when the gurney was rolled to the ambulance, appellant went to within a foot of it, leaned over a kneeling paramedic's shoulders and again began taking photographs of the woman with the use of a flash. At that point, Officer Jones advised appellant she was under arrest and took her into custody. He testified at trial that he arrested appellant for "continuing to interfere . . . [when] she had been given ample warning to stay out of

---

[2] Cumming testified that he was concerned about the strobe light because it left blind spots in his eyes and was causing the patient to move and jerk in response to the light. Further, both Cumming and Sergeant Myers testified that they felt such close-range pictures were inappropriate because the injured woman's blouse was open.

the scene and stop interfering . . . and since she continued to fail to co-operate. . . ."

Appellant testified in her own behalf and presented the testimony of several paramedics, firemen, police officers, and photographers. Appellant's defense was that she had a good reputation as a professional photographer; that she often took photographs of fires, extrications and other similar events at the behest of different fire chiefs; that as a courtesy she often submitted her photographs to magazines read by firefighters and emergency personnel; that on past occasions she did not interfere with rescue operations when taking photographs; and that on this occasion, although she was acting in her usual professional manner, she was harassed by Officers Myers and Jones because of her gender.

## CONTENTIONS

I. Appellant's conviction on count I should be reversed because:

a. The evidence was insufficient to show that Cumming, a private paramedic, comes within the definition of "emergency rescue personnel" or that he was discharging an "official duty," as those terms are used within Penal Code sections 148.2, subdivision 1, and 245.1.

b. The trial court prejudicially erred in failing to instruct the jury, sua sponte, as to the definition of "emergency rescue personnel" and "official duty," as those terms are used within Penal Code sections 148.2, subdivision 1, and 245.1.

II. Appellant's conviction on count II should be reversed because:

a. The trial court prejudicially erred in failing to require the People to elect the specific act constituting the Penal Code section 148.2, subdivision 2, violation.

b. The trial court prejudicially erred in failing to instruct the jury, sua sponte, as to the definition of "public officer," as that term is used within Penal Code section 148.2, subdivision 2.

## DISCUSSION

*I. Appellant's conviction on count I must be reversed because the evidence is insufficient to show that appellant violated Penal Code section 148.2, subdivision 1.*

■ Appellant contends the evidence is insufficient to show that Cumming, a private paramedic, comes within the definition of "emergency rescue

personnel" or that he was discharging an "official duty," as those terms are used within Penal Code sections 148.2, subdivision 1, and 245.1. We agree.

An examination of the record to ascertain whether there is substantial evidence of each of the essential elements (*People* v. *Johnson* (1980) 26 Cal.3d 557, 577 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]) of a section 148.2, subdivision 1, violation, as charged in count I, reveals the evidence is insufficient to sustain appellant's conviction on that count.

Penal Code section 148.2, subdivision 1, provides: "Every person who willfully commits any of the following acts at the burning of a building or at any other time and place where any fireman or firemen or emergency rescue personnel are discharging or attempting to discharge an official duty, is guilty of a misdemeanor: 1. Resists or interferes with the lawful efforts of any *fireman* or firemen or *emergency rescue personnel* in the discharge or attempt to discharge an *official duty.*" (Italics added.)

Penal Code section 245.1 provides, in pertinent part: "As used in Section 148.2, '*emergency rescue personnel*' means any person who is an officer, employee or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, whether such person is a volunteer or partly paid or fully paid, while he or she is actually engaged in the on-the-site rescue of persons or property during an emergency . . . ." (Italics added.)

Count I charged, in the statutory language of section 148.2, subdivision 1, that appellant willfully and unlawfully resisted and interfered with the lawful efforts of a "a *fireman* and *emergency rescue personnel,* to wit, Paramedic Stuart C[u]mming, in the discharge and the attempt to discharge [his] *official duty.*"

Although fire department paramedics were also present at the scene of the accident, the evidence introduced at trial shows, without contradiction, that Cumming was not one of them. Rather, he was a private paramedic, employed by Aids Medical Enterprises, Inc. Moreover, Cumming's status as a certified Los Angeles County Mobile Intensive Care Paramedic does not make him a "fireman," nor does the certificate bring him within the definition of "emergency rescue personnel," as that term is used in section 148.2, subdivision 1. Section 245.1 unequivocally defines "emergency rescue personnel" to mean "any person who is an officer, employee or member of a fire department or fire protection or fire fighting agency [of specified

governmental or public bodies], whether such person is a volunteer[3] or partly paid or fully paid . . . ."

"Although the Penal Code commands us to construe its provisions 'according to the fair import of their terms, with a view to effect its objects and to promote justice' (Pen. Code, § 4), it is clear the courts cannot go so far as to create an offense by enlarging a statute, by inserting or deleting words, or by giving the terms used false or unusual meanings. (*People* v. *Baker* (1968) 69 Cal.2d 44, 50 [69 Cal.Rptr. 595, 442 P.2d 675].) Penal statutes will not be made to reach beyond their plain intents; they include only those offenses coming clearly within the import of their language. (*DeMille* v. *American Fed. of Radio Artists* (1947) 31 Cal.2d 139, 156 [187 P.2d 769, 175 A.L.R. 382].) Indeed, 'Constructive crimes—crimes built up by courts with the aid of inference, implication, and strained interpretation—are repugnant to the spirit and letter of English and American criminal law.' (*Ex parte McNulty* (1888) 77 Cal. 164, 168 [19 P.2d 237].)" (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617].)

Apparently, when appellant was charged with the section 148.2 violations, Cumming was thought to be a fire department paramedic, one of the class of persons the Legislature sought to protect in enacting that section. The People's confusion, however, does not obviate the fact that the prosecution failed at trial to prove the essential elements of the section 148.2, subdivision 1, violation charged in count I.[4]

---

[3]The People's argument that Cumming is included within the definition of "emergency rescue personnel" (Pen. Code, §§ 148.2, subd. 1, 245.1) because he was a "volunteer" completely ignores the fact that Cumming is not "an officer, employee or member of a fire department or fire protection or fire fighting agency." (Pen. Code, § 245.1). It cannot be said, therefore, that Cumming, a private paramedic, was discharging or attempting to discharge his "official duty" when appellant resisted and interfered with his efforts. (Pen. Code, § 148.2, subd. 1.)

[4]The People, recognizing their deficiency of proof in the trial court, request that this court take judicial notice of certain documents and contracts between Aids Medical Enterprises, Inc. and the City of Whittier, offered for the first time on appeal, which they assert show that Cumming was an "employee" of a "fire fighting agency." (Pen. Code, § 245.1.) The request, however, comes too late. Documents and factual matters not before the trial court cannot be included as part of the record on appeal (*Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Foster* v. *Civil Service Com.* (1983) 142 Cal.App.3d 444, 449 [190 Cal.Rptr. 893]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 250, 251, pp. 256-258) and cannot be considered by an appellate court in reviewing the judgment (*People* v. *Pearson* (1969) 70 Cal.2d 218, 221-222, fn. 1 [74 Cal.Rptr. 281, 449 P.2d 217]; Witkin, Cal. Criminal Procedure (1963) Appeal, § 682, p. 666). In any event, the contract, on which the People rely to establish that Cumming was an "employee" of a "fire fighting agency," had expired and its extension was not yet in effect on the date of the instant accident. Further, while the contract was between Aids Medical Enterprises, Inc. and the City of Whittier, nothing in the record leads us to believe the City of Whittier has a fire department of its own. On the contrary, it was the firefighters and paramedics of the County of Los Angeles Fire Department, stationed in Whittier, who responded to the scene of the accident.

■ An appellate determination of insufficient evidence is tantamount to a finding that the trial court should have directed a verdict of acquittal; since a retrial will be barred by such a verdict, a new trial is also improper after the equivalent decision on appeal. (*People* v. *Pierce* (1979) 24 Cal.3d 199, 210 [155 Cal.Rptr. 657, 595 P.2d 91]; *Burkes* v. *United States* (1978) 437 U.S. 1 [57 L.Ed.2d 1, 98 S.Ct. 2141]; *Greene* v. *Massey* (1978) 437 U.S. 19 [57 L.Ed.2d 15, 98 S.Ct. 2151].)

II.  ■  *Appellant's conviction for violating Penal Code section 148.2, subdivision 2, as charged in count II, must be reversed because this court cannot determine on review whether the jurors' verdict of guilty rested on an incorrect legal theory.*

Appellant was charged in count II of the complaint with a violation of Penal Code section 148.2, subdivision 2. That section provides in pertinent part: "Every person who willfully commits any of the following acts at the burning of a building or at any other time and place where any fireman or firemen or emergency rescue personnel are discharging or attempting to discharge an official duty, is guilty of a misdemeanor:

" .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"2. Disobeys the lawful order of any *fireman* or *public officer*." (Italics added.)

Count II charged, in the statutory language of section 148.2, subdivision 2, that appellant "disobey[ed] the lawful orders of a *fireman* or *public offic[er]*, to wit, Paramedic Cumming and Sgt. Myers." (Italics added.)

The evidence presented at trial shows that Paramedic Cumming was an employee of a private company and that he was not one of the fire department paramedics who also responded to the scene. Therefore, Cumming clearly was not a "fireman."

We must examine then whether he was a "public officer." Neither section 148.2, subdivision 2, nor any companion provision of the Penal Code defines the term "public officer," as it is used in that section. A possible explanation for that omission appears in California Jurisprudence Third: "The words 'public officer' are used in so many senses that it is hardly possible to undertake a precise definition that will adequately and effectively cover every situation." (52 Cal.Jur.3d, Public Officers and Employees, § 1, p. 162, fn. omitted.)

■ However, "[o]ne of the prime requisites [of a public office] is that [it] be created by the *constitution* or authorized by some *statute*. And it is

essential that the incumbent be clothed with some portion of the sovereign functions of government, either legislative, executive, or judicial to be exercised in the interest of the public. There must also be a duty or service to be performed, and it is the nature of this duty, not its extent, that brings into existence a public office and a *public officer*.[5] Thus, an office, as a general rule, is based on some *law* that defines the duties appertaining to it and fixes the tenure, and it exists independently of the presence of a person in it." (52 Cal.Jur.3d, Public Officers and Employees, § 12, pp. 176-177, fns. omitted.)

The evidence at trial justified a finding that Sergeant Myers, who is employed by the City of Whittier Police Department, is a *public officer*. Historically that term has been held to include law enforcement officers. (See *In re William F.* (1974) 11 Cal.3d 249, 251 [113 Cal.Rptr. 170, 520 P.2d 986]; *People* v. *Powell* (1950) 99 Cal.App.2d 178, 179 [221 P.2d 117]; *People* v. *Martensen* (1926) 76 Cal.App. 763 [245 P. 1101].) However, nothing in the record indicates that Paramedic Cumming, employed by Aids Medical Enterprises, Inc., a private company, is likewise a public officer.

Nonetheless, the jurors were instructed, as to count II, in the language of section 148.2, subdivision 2, that an individual is guilty of a misdemeanor if he or she "[d]isobeys the lawful orders of any *fireman* or *public officer*." (Italics added.) The jurors were further instructed that "'[p]ublic officer' as used in this section includes an officer of the Whittier Police Department." The jurors were not told, however, that Paramedic Cumming was neither a *fireman* nor a *public officer* and, throughout the trial, testimony was presented to the effect that appellant disobeyed the orders of Paramedic Cumming.

▮ Inasmuch as the jurors returned a general verdict of guilty on count II, we cannot tell from the record if they found appellant guilty of violating section 148.2, subdivision 2, based on a belief that appellant disobeyed the lawful orders of Paramedic Cumming, the lawful orders of Sergeant Myers or the lawful orders of both of them.

"In these circumstances the governing rule on appeal is both settled and clear: when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, *and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested*, the conviction cannot stand." (*People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468], italics

---

[5]"In this, and in other respects, he differs from a private officer, who holds his position by contract rather than by election or official appointment, and whose duties are performed at the instance and for the benefit of the individual or corporation employing him." (52 Cal.Jur.3d, Public Officers and Employees, § 19, p. 182, fns. omitted.)

added; see *People* v. *Boyd* (1985) 38 Cal.3d 762, 770 [215 Cal.Rptr. 1, 700 P.2d 782]; *People* v. *Olmedo* (1985) 167 Cal.App.3d 1085, 1094 [213 Cal.Rptr. 742].)

In light of our determinations that appellant's convictions on counts I and II must be reversed, we need not address appellant's remaining contentions.

## CONCLUSION

"We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean." (*Roschen* v. *Ward* (1929) 279 U.S. 337, 339 [73 L.Ed. 722, 728, 49 S.Ct. 336] (by, Holmes, J.).)

Despite appellant's taunting and inappropriate conduct, reversal of her conviction is mandated by both the record and the language of Penal Code sections 148.2 and 245.1.

Nevertheless, we conclude that a private paramedic is deserving of the same protective cover the law affords to paramedics associated with fire departments and firefighting agencies. We therefore, respectfully suggest that the Legislature exercise its will to that end.

## DISPOSITION

The judgment is reversed. The cause is remanded to the Municipal Court of Whittier with directions to dismiss count I and, on retrial of count II, to strike the allegations with regard to Paramedic Cumming.

Klein, P. J., and Danielson, J., concurred.