**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DRENDOLYN SIMS,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>MIKE STANTON,<br>*Defendant-Appellee*. | No. 11-55401<br><br>D.C. No.<br>3:09-cv-01356-<br>JM-WMC<br><br>ORDER AND<br>AMENDED OPINION |

Appeal from the United States District Court
for the Southern District of California
Jeffrey T. Miller, Senior District Judge, Presiding

Argued and Submitted
August 8, 2012—Pasadena, California

Filed December 3, 2012
Amended January 16, 2013

Before: Stephen Reinhardt, Barry G. Silverman,
and Kim McLane Wardlaw, Circuit Judges.

Order;
Opinion by Judge Reinhardt

## SUMMARY[*]

### Civil Rights

The panel reversed the district court's summary judgment granting qualified immunity to a police officer and remanded in this action brought under 42 U.S.C. § 1983.

Plaintiff suffered serious injuries as a result of the officer's act of kicking down the front gate of her yard. She alleged that the officer violated her Fourth Amendment rights by his warrantless entry into the curtilage of her house during his pursuit of a suspect, who had committed at most a misdemeanor offense. The panel first held that plaintiff's yard was curtilage entitled to the same Fourth Amendment protections as her home. The panel held that the officer's actions amounted to an unconstitutional search and that the law at the time of the incident would have placed a reasonable officer on notice that his warrantless entry into the curtilage of a home constituted an unconstitutional search, which could not be excused in this case under the exigency or emergency exception to the warrant requirement.

### COUNSEL

L. Marcel Stewart, San Diego, California, for Petitioner.

Peter J. Ferguson, Santa Ana, California, for Respondent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

The opinion filed on December 3, 2012 is hereby amended as follows:

1. At page 11, lines 11–12 of the slip opinion, delete <the single misdemeanor of>.

2. At page 11, line 16 of the slip opinion, after <however,> insert <generally>.

3. At page 11, line 17 of the slip opinion, after the sentence ending <warrantless entry.> insert the following sentence <Nothing about the facts of this case warrants a departure from our general rule that an underlying misdemeanor offense justifies a warrantless entry in only "the 'rarest' cases." *Id.* (citations omitted).>.

4. At page 11, line 21 of the slip opinion, after <fleeing felon> insert <and the exigency of potential destruction of evidence by that felon>.

5. At page 11, lines 26–27 of the slip opinion, delete <The district court erroneously applied this precedent.>.

6. At page 12, line 10 of the slip opinion, after <any> and before <circumstances> delete <"rare">.

7. At page 12, lines 10–11 of the slip opinion, after <circumstances> delete <that would call for> and insert <making this one of those "rarest" cases justifying>.

8. At page 12, at line 11 of the slip opinion, between <exception to the> and <rule> insert <general>.

With these amendments, Judges Reinhardt, Silverman, and Wardlaw vote to deny the petition for rehearing and the suggestion for rehearing en banc. The full court was advised of the suggestion for rehearing en banc. No judge requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing and petition for rehearing en banc are DENIED. No future petitions for rehearing or petitions for rehearing en banc will be entertained.

---

**OPINION**

REINHARDT, Circuit Judge:

Drendolyn Sims suffered serious injuries as a result of officer Mike Stanton's act of kicking down the front gate to her small, enclosed yard. Sims was standing directly behind the gate when it swung open, knocking her down and rendering her temporarily unconscious, or at least incoherent, causing a laceration on her forehead and an injury to her shoulder. Stanton unreasonably believed that his warrantless entry into the curtilage of Sims's home was justified by his pursuit of Nicholas Patrick, who had committed at most a misdemeanor offense by failing to stop for questioning in response to a police order. Sims filed an action in district court under 42 U.S.C. § 1983, alleging that her Fourth Amendment rights had been violated by Stanton's warrantless entry into her front yard and seeking damages for her injuries.

The district court found that Stanton was entitled to qualified immunity and granted his motion for summary judgment. Reviewing that decision de novo, we must determine whether Stanton violated Sims's Fourth Amendment right to be free from a warrantless entry into her front yard and whether the contours of that right were sufficiently established at the time that a reasonable officer would have been aware that his conduct was unconstitutional. We conclude that Stanton's actions amounted to an unconstitutional search. We hold that the law at the time of the incident would have placed a reasonable officer on notice that his warrantless entry into the curtilage of a home constituted an unconstitutional search, which could not be excused under the exigency or emergency exception to the warrant requirement. Stanton was, therefore, not entitled to qualified immunity.

## BACKGROUND[1]

On May 27, 2008 at approximately one o'clock in the morning, Officer Stanton and his partner responded to a radio call regarding an "unknown disturbance" in the street involving a baseball bat in La Mesa, California. The officers were driving a marked car and wearing police uniforms. Stanton was familiar with the area as one "known for violence associated with the area gangs," and he "was also aware of gang members being armed with weapons such as

---

[1] Although we review a district court's grant of summary judgment de novo, evaluating the facts in the light most favorable to the nonmoving party, most of the material facts in this case are not in dispute. Thus, we set forth the undisputed facts and note where a disputed fact affects the legal analysis that follows. *See LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 950 n.3 (9th Cir. 2000).

guns and knives." Still, when the officers arrived, they observed nothing unusual.

The officers noticed three men walking in the street. Upon seeing the car, two of the men turned into a nearby apartment complex. The third, who turned out to be Patrick, crossed the street about twenty-five yards in front of the police car and walked quickly toward Sims's home, which was located in the same direction as the police car. Neither officer saw Patrick with a baseball bat or any other possible weapon. The officers had no information that would link Patrick to the disturbance. Nor did the officers observe any conduct on Patrick's part that would suggest that he had been involved in the disturbance that they had been called to investigate.

According to Stanton's version of the facts, he exited the patrol car, announced "police," and ordered Patrick to stop multiple times in a voice that was loud enough that all persons in the area would have heard his commands. Whether Patrick heard the commands or not, he did not stop. Instead, he entered the gate to Sims's front yard and the gate shut behind him. Believing that Patrick was disobeying his lawful order (a misdemeanor offense under California Penal Code § 148[2]) and "fearing for [his] safety," Stanton made a "split-second decision" to kick open the gate to Sims's yard. Sims was standing behind the gate when it flew open, striking her and sending her into the front stairs. She was temporarily

---

[2] California Penal Code § 148 makes "willfully resist[ing], delay[ing], or obstruct[ing]" an officer "in the discharge or attempt to discharge any duty of his or her office" a misdemeanor offense punishable by up to one year and by a fine of up to $1000. § 148; *see also In re M.M.*, 54 Cal. 4th 530, 533 (2012) (§ 148 is a misdemeanor offense).

knocked unconscious, or at least became incoherent, as a result of the blow and sustained a laceration on her forehead, an injury to her shoulder, and was taken to the hospital.

The gate Stanton kicked open is part of a fence made of "sturdy, solid wood" that is more than six feet tall, enclosing the front yard to Sims's home. Sims lives in a manufactured home with a small front yard that abuts the house. She states that she "enjoy[s] a high level of privacy in [her] front yard." Her fence, which was built for "privacy and protection," ensures that her outdoor space is "completely secluded" and cannot be seen by someone standing outside the gate. Additionally, the front yard is used for talking with friends, as Sims was doing on the evening of the incident, and for storing her wheelchair, which she keeps parked inside the fence.

Sims's complaint against Stanton alleged unconstitutional arrest, search, excessive force, and additional state law tort claims. Stanton moved for summary judgment, which the district court granted, finding that (1) Stanton did not use excessive force; (2) exigency and a lesser expectation of privacy in the curtilage surrounding Sims's home justified the warrantless entry; and (3) no clearly established law put Stanton on notice that his conduct was unconstitutional and therefore he was entitled to qualified immunity. Sims appeals the district court's decision on her unconstitutional search claim and the grant of qualified immunity to Stanton.[3]

---

[3] After dismissing Sims's federal claims, the district court declined to exercise supplemental jurisdiction over her state law claims and dismissed them without prejudice. Because we reverse the dismissal of Sims's federal claims, we also reverse the dismissal of Sims's state law claims.

## DISCUSSION

The Fourth Amendment prohibits officers from entering an enclosed front yard—curtilage—without a warrant, to the same extent that it prohibits them from entering a home. *See United States v. Perea-Rey*, 680 F.3d 1179, 1184 (9th Cir. 2012). Thus, we first must determine whether Sims's front yard was curtilage. If so, Stanton's warrantless entry is unconstitutional unless it meets the requirements for an exception to the warrant rule.

We next review the facts presented to the district court to determine whether Stanton's warrantless entry meets either the exigency or emergency exceptions to the warrant requirement. *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009). Because both exceptions turn on the seriousness of the underlying offense, we ultimately conclude that Stanton's warrantless entry cannot be justified by his pursuit of Patrick, who committed, at most, only a misdemeanor. *See United States v. Johnson*, 256 F.3d 895, 908 n.6 (9th Cir. 2001) (en banc) (exigency exception); *LaLonde*, 204 F.3d at 958 n.16 (emergency exception).

### *Curtilage*

Before analyzing the exceptions to the warrant requirement, it must be determined whether Sims's yard is curtilage and therefore entitled to the same Fourth Amendment protections as her home.

It is well-established that "[t]he presumptive protection accorded people at home extends to outdoor areas traditionally known as 'curtilage'—areas that, like the inside of a house, harbor the intimate activity associated with the sanctity of a person's home and the privacies of life." *United States v. Struckman*, 603 F.3d 731, 738 (9th Cir. 2010) (quoting *United States v. Dunn*, 480 U.S. 294, 300 (1987)) (internal quotations and alterations omitted). "Because the curtilage is part of the home, searches and seizures in the curtilage without a warrant are also presumptively unreasonable." *Perea-Rey*, 680 F.3d at 1184 (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)). The district court recognized that Sims's front yard was curtilage, but erred in finding that its status as curtilage entitled Sims to a "lesser expectation of privacy . . . as opposed to the home itself."

Sims's small, enclosed, residential yard is quintessential curtilage. "[A] small, enclosed yard adjacent to a home in a residential neighborhood [] is unquestionably such a 'clearly marked' area 'to which the activity of home life extends,' and so is 'curtilage' subject to the Fourth Amendment protection." *Struckman*, 603 F.3d at 739 (quoting *Oliver*, 466 U.S. at 182 n.12). Because Sims's front yard obviously meets the definition of curtilage, the district court did not need to analyze it under the factors announced by the Supreme Court in *United States v. Dunn*. 480 U.S. at 294. These factors serve as "useful analytical tools" to ensure that Fourth Amendment protections extend to areas that are much further from the house but that still should be "treated as the home itself." *Id*. at 300–01. Here, however, the factors are unnecessary because it is "easily understood from our daily

experience" that Sims's yard is curtilage.[4]  *Oliver*, 466 U.S. at 182 n.12; *see also Struckman*, 603 F.3d at 739.

Because curtilage is protected to the same degree as the home, the district court erred in applying a "totality of the circumstances" balancing inquiry that justified the warrantless intrusion based in part on a "lesser expectation of privacy" in one's front yard as compared to one's home.  We hold that the Fourth Amendment protects Sims's yard, a mere extension of the home itself, from warrantless search.  *Perea-Rey*, 680 F.3d at 1184.  Stanton's warrantless entry, therefore, was presumptively unconstitutional.  *Struckman*, 603 F.3d at 743.

---

[4] Of course, applying the *Dunn* factors to Sims's yard leads to the same result.  The first factor, "the proximity of the area claimed to be curtilage to the home," *id*. at 301, is met because her front yard is adjacent to her home and extends only a short distance.  The second factor, whether the area is "included within an enclosure surrounding the home," *id*., is met because a tall wooden fence encloses both her front yard and her home.  Sims meets the third factor, "the nature of the uses to which the area is put," *id*., because Sims stated that she enjoyed a high degree of privacy in her front yard, that she used it to store her wheelchair, and that she entertains guests there.  The final factor, "steps taken by the resident to protect the area from observation by people passing by," *id*., is met because the gate that Stanton kicked in was a "sturdy, solid wood," six-foot-high fence with narrow slats between the planks of wood.

Stanton's argument that because he could see the front door it was not entitled to the same expectation of privacy is beside the point.  The warrantless entry was to Sims's yard, which Stanton obviously could not see prior to kicking in the front gate; if he could have, he would have known that Sims was standing behind it.

### *Exceptions To The Warrant Requirement*

When the warrantless search is to home or curtilage, we recognize two exceptions to the warrant requirement: exigency and emergency. *Hopkins*, 573 F.3d at 763. "These exceptions are narrow and their boundaries are rigorously guarded to prevent any expansion that would unduly interfere with the sanctity of the home." *Id.* at 763. The exigency exception assists officers in the performance of their law enforcement function. It permits police to commit a warrantless entry where "necessary to prevent . . . the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Id.* at 763 (citing *United States v. McConney*, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc)). The emergency exception, in contrast, seeks to ensure that officers can carry out their duties safely while at the same time ensuring the safety of members of the public. It applies when officers "have an objectively reasonable basis for concluding that there is an immediate need to protect others or themselves from serious harm." *Id.* at 764 (citing *United States v. Snipe*, 515 F.3d 947, 951–52 (9th Cir. 2008)) (internal emphasis omitted).

Under either exception, our review of whether the circumstances justified the warrantless entry considers the seriousness, or lack thereof, of the underlying offense. *Johnson*, 256 F.3d at 908 n.6 (exigency exception); *LaLonde*, 204 F.3d at 958 n.16 (emergency exception). The district court erroneously granted summary judgment to Stanton, despite clear precedent that precludes the finding of an exception to the warrant requirement when the circumstances turn on only a misdemeanor offense. *Johnson*, 256 F.3d at 908 n.6; *LaLonde*, 204 F.3d at 958 n.16.

### *Exigency Exception*

Stanton attempts to show that exigent circumstances justified his warrantless entry, specifically that Patrick would have escaped arrest. The burden to show exigent circumstances rests on the officer, who must "point[] to some real immediate and serious consequences if he postponed action to get a warrant." *Welsh v. Wisconsin*, 466 U.S. 740, 749–50, 751 (1984) (internal quotation marks and citation omitted). We have recognized circumstances that justify a warrantless entry to prevent "the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Hopkins*, 573 F.3d at 763 (quoting *McConney*, 728 F.2d at 1199).

Not every law enforcement action, however, justifies an exception to the warrant requirement. The recognition that sometimes law enforcement needs take precedence must be balanced against the Fourth Amendment protections against unreasonable searches. We have given officers clear guidance on how to approach the balance between "a person's right to be free from warrantless intrusions" and "law enforcement's interest in apprehending a fleeing suspect." *Johnson*, 256 F.3d at 908 n.6. We have said, "[i]n situations where an officer is truly in hot pursuit and the underlying offense is a felony, the Fourth Amendment usually yields," but "in situations where the underlying offense is only a misdemeanor, law enforcement must yield to the Fourth Amendment in all but the 'rarest' cases." *Id.* (citations omitted). Stanton offers nothing to show why in this case the Fourth Amendment should yield.

Stanton does not argue that this case involves probable cause for any crime more serious than disobeying an officer's order to stop.[5]  We do not doubt that Stanton believed that Patrick might escape arrest if he did not follow him into Sims's front yard.   The possible escape of a fleeing misdemeanant, assuming Patrick had been fleeing, is not, however, generally, a serious enough consequence to justify a warrantless entry.   Nothing about the facts of this case warrants a departure from our general rule that an underlying misdemeanor offense justifies a warrantless entry in only "the 'rarest' cases." *Id.* (citations omitted).   The precedent relied on by the district court, *United States v. Santana*, which held that a "suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place," involved a fleeing felon and the exigency of potential destruction of evidence by that felon.   427 U.S. 38, 43 (1976).   Since *Santana*, the Supreme Court and our court have made it clear that the exigency exception to the warrant requirement generally applies only to a fleeing felon not to a fleeing misdemeanant.   *Welsh*, 466 U.S. at 750; *Johnson*, 256 F.3d at 908 n.6.

The warrantless intrusion is particularly egregious in this case because Stanton violated the Fourth Amendment rights of an uninvolved person, Sims.   *See Johnson*, 256 F.3d at 909.  Stanton could have knocked on the door and asked Sims for permission to enter and speak with, or arrest, Patrick. Knocking on the door would still not have justified a

---

[5] Whether Stanton had probable cause to believe that Patrick had violated California Penal Code § 148 is fiercely debated by the parties. We do not need to decide this question, because, even if Stanton had probable cause to believe that Patrick violated § 148, that violation would at most be a misdemeanor offense.

warrantless entry, but at the very least, with the warning of a knock, Sims might have been able to move away from behind the gate before Stanton kicked it open.  In any event, the record before us does not reveal any circumstances making this one of those "rarest" cases justifying an exception to the general rule that "where the underlying offense is only a misdemeanor, law enforcement must yield to the Fourth Amendment." *Johnson*, 256 F.3d at 908 n.6.

## *Emergency Exception*

Stanton asserts that he pursued Patrick into Sims's curtilage because he feared for his own safety.  To establish that the circumstances gave rise to an emergency situation, Stanton must show an "objectively reasonable basis for fearing that violence was imminent." *Ryburn v. Huff*, 132 S. Ct. 987, 992 (2012).  As in the case of an exigency exception, an "officer['s] assertion of a potential threat to [his] safety must be viewed in the context of the underlying offense." *LaLonde*, 204 F.3d at 958 n.16.[6]  Where the threat is to the officer's safety, we observe that "[o]ne suspected of committing a minor offense would not likely resort to desperate measures to avoid arrest and prosecution."  *Id.* (quoting *United States v. George*, 883 F.2d 1407, 1413 n.3 (9th Cir. 1989)).  Reviewing the constitutionality of the warrantless entry de novo, we conclude that the record does not support a finding of an emergency after Patrick entered Sims's fenced yard.

---

[6] Stanton attempts to distinguish *LaLonde* on the ground that it involved the warrantless entry into a home, rather than a front yard.  This distinction is meaningless because the yard is curtilage and therefore entitled to the same protection as the home under the Fourth Amendment. *See* discussion *supra*, pp. 9–10.

Stanton was called to investigate a disturbance involving a baseball bat at one o'clock in the morning. Although Stanton knew the area as one associated with gangs whose members may be armed, he had no information tying Patrick to the reported disturbance. He did not see Patrick carrying a baseball bat or any other weapon.[7] The only facts in the record suggesting suspicious behavior were that Stanton observed Patrick "cross the street and quickly walk/run toward" Sims's home, and that after he ordered Patrick to stop, Patrick "looked directly at [Stanton], ignored [his] lawful orders and quickly went through a front gate." Once Patrick fled into Sims's front yard, without signaling in any way that he would engage Stanton, return with a weapon, or otherwise threaten him with violence, there was simply no evidence of imminent danger to the officer or anyone else.

The circumstances of this case stand in stark contrast to the facts that supported the officer's reasonable belief in *Ryburn* that danger could be imminent. In *Ryburn*, four officers went to high school student Vincent Huff's home to investigate threats that he was going to "shoot up" the school. 132 S. Ct. at 988. The officers testified to facts that were specific to Mrs. Huff and her son that "led them to be concerned for their own safety and for the safety of other persons in the residence." *Id.* at 990. In addition to the reported threat of a school shooting, these facts included:

> the unusual behavior of the parents in not answering the door or the telephone; the fact that Mrs. Huff did not inquire about the reason for their visit or express concern that they were investigating her son; the fact that

---

[7] When Patrick was eventually stopped, he had no weapon on his person.

she hung up the telephone on the officer; the fact that she refused to tell them whether there were guns in the house; and finally, the fact that she ran back into the house while being questioned.

*Id*. Based on the suspected presence of weapons in the home of a teenager who had threatened to commit a violent felony by the use of deadly weapons, those officers had an "objectively reasonable basis" to fear that "family members or the officers themselves were in danger." *Id.* at 990. Here, Stanton attempts to justify his fear that Patrick threatened his safety, by pointing to the report of an incident involving a bat and his belief that Sims's neighborhood was a high-crime area. However, none of the factors: Stanton's belief that Patrick committed a misdemeanor by failing to heed his order, the original call to the police regarding the disturbance, the presence of gangs and the crime rate in the neighborhood, nor a combination of all three is sufficient to constitute an "emergency" that justified breaking down a closed gate and entering without a warrant.

Stanton described Sims's neighborhood as "an area known for violence associated with the area gangs," and stated that he "was also aware of gang members being armed with weapons such as guns and knives." Based on the facts which he knew about the neighborhood and the report of a disturbance in the street, Stanton speculates that Patrick may have been carrying a concealed weapon, that he may have gone into Sims's home in order to arm himself and then return to the street, or that someone armed inside Sims's home might have attempted to interfere with Patrick's arrest. Without some particularized facts relating to Patrick, Stanton's inferences are too generalized and speculative to

provide an "objectively reasonable basis" for fearing that violence might be imminent, *see Ryburn*, 132 S. Ct. at 992, and nothing in the record reveals an emergency that justifies the warrantless entry of a home's curtilage in pursuit of a misdemeanant.

A contrary conclusion would undermine Fourth Amendment protections for individuals residing, often not by choice, in poor neighborhoods where crime is more prevalent than in wealthy communities. As we have said in the context of drawing inferences from neighborhood characteristics to support reasonable suspicion of criminal activity, "[w]e must be particularly careful to ensure that a 'high crime' area factor is not used with respect to entire neighborhoods or communities in which members of minority groups regularly go about their daily business." *United States v. Montero-Camargo*, 208 F.3d 1122, 1138 (9th Cir. 2000). We do not imply that general factors, such as the time of day, the nature of the call, or the officers' prior experience with gangs and violence in the neighborhood, are of no relevance to an officer's fear that violence may occur. To justify an emergency exception to the warrant requirement, however, these factors must be combined with particularized evidence that the person being pursued or the home being investigated poses a threat to the officer's or the public's safety. This was not the case here: Patrick entered Sims's home, where he was apparently welcome, and gave Stanton no reason to believe that his or anyone else's safety would be in danger.

In sum, Stanton's "assertion of a potential threat to [his] safety," based on generalized assumptions concerning the neighborhood or its residents, rather than specific facts relating to the individuals involved, did not justify an exception to the warrant requirement when viewed "in the

context of the underlying offense," at most a misdemeanor. *LaLonde*, 204 F.3d at 958 n.16.

## *Qualified Immunity*

In a claim for civil damages under § 1983, to avoid the bar of qualified immunity, the plaintiff must show that the officer violated a constitutional right and that the right was "clearly established" at the time of the occurrence. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The determination whether a right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The individual circumstances of the case do not, however, provide a basis for qualified immunity if "the unlawfulness was apparent in light of preexisting law." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1085 (9th Cir. 1998) (internal citation omitted). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Supreme Court has made clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.* Therefore, the "salient question" is "whether the state of the law" in 2008 gave Stanton "fair warning" that his warrantless entry was unconstitutional. *Id.*

Contrary to the district court's findings, a reasonable officer should have known that the warrantless entry into Sims's front yard violated the Fourth Amendment because clearly established law afforded notice that Sims's front yard was curtilage and, was therefore, protected to the same extent as her home. Established law also afforded notice that a

warrantless entry into a home cannot be justified by pursuit of a suspected misdemeanant except in the rarest of circumstances. Since well before the incident occurred in 2008, Supreme Court law and the precedent of this court had established that, on the basis of the record before us, Stanton's conduct was clearly unconstitutional.

A front yard has been considered curtilage since 1984 when the Supreme Court decided *Oliver v. United States*. 466 U.S. at 170. A front yard enclosed by a six-foot-tall, wooden fence, in which private items are stored and social interactions take place is the paradigmatic example of curtilage and is both "clearly marked" and "easily understood." *Id.* at 182 n.12. Thus, Stanton should have known that his warrantless entry was presumptively unconstitutional.

This presumption may be overcome only by circumstances justifying either an exigency or emergency exception. Stanton attempts to show exigent circumstances by pointing to the risk that Patrick might escape. It should have been clear to Stanton, however, from Supreme Court and Ninth Circuit decisions that law enforcement actions involving a misdemeanor offense will rarely, if ever, justify a warrantless entry. *Welsh*, 466 U.S. at 750 (clearly established since 1984); *Johnson*, 256 F.3d at 908 (clearly established since 2001). That *Welsh* leaves open the possibility for a "rare" exception to this rule does not mean that the rule was not clearly established at the time and does not change our qualified immunity analysis. Here, nothing in the record suggests that this case was "rare" in any respect.

Stanton also contends that the emergency exception justified his warrantless entry by asserting that he feared for

his safety.    The circumstances of this case belie the
reasonableness of that fear.   The non-serious nature of the
underlying offense, failure to heed an officer's command,
precludes us from finding, on the record before us, that an
emergency exception was applicable.  *LaLonde*, 204 F.3d at
958 (clearly established since 2000).  So, too, does the lack of
any reasonable basis for any specific concern that the
individuals involved were likely to engage in any act of
violence.  Accordingly, Stanton is not entitled to qualified
immunity.

For the reasons stated above, the district court's order
granting summary judgment in favor of the defendant is
**REVERSED** and **REMANDED**.