Filed 4/16/13  P. v. Yu CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER DAI-ICHI YU,<br><br>    Defendant and Appellant. | G046106<br><br>(Super. Ct. No. 10WF0524)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed in part and reversed in part.

Christopher Nalls, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Bradley Weinreb and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

A jury convicted defendant Christopher Dai-Ichi Yu of murder (count 1, Pen. Code, § 187, subd. (a))[1] and found true the allegations he committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and personally discharged a firearm (§ 12022.53, subd. (c)).[2] The jury also convicted him of attempted murder (count 2, §§ 187, subd. (a), 664, subd. (a)) and found true the allegations he committed the crime for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)) and personally discharged a firearm (§ 12022.53, subd. (c)). The jury also convicted him of street terrorism. (Count 3, § 186.22, subd. (a).)

The court sentenced defendant to an indeterminate term of 55 years to life on count 1 (including the firearm and gang enhancements) and a determinative term of 39 years on count 2 (including the firearm and gang enhancements). It stayed execution of sentence on count 3 pursuant to section 654.

On appeal defendant (1) challenges the sufficiency of the evidence to support the murder and attempted murder convictions and the gang enhancements, and (2) contends the court made instructional and sentencing errors. Defendant's contentions of sentencing error are meritorious and we reverse the judgment accordingly in those respects. With those exceptions, we affirm the judgment.

---

[1] All statutory references are to the Penal Code.

[2] As to count 1, the jury also found true the special circumstance allegation that defendant committed the murder during a robbery. (§ 190.2, subd. (a)(17)(A).) The court later granted defendant's motion for a new trial on the allegation and subsequently granted the People's motion to dismiss it because the court had failed to instruct the jury with CALCRIM No. 703 (relating to the intent requirement for an accomplice charged with special circumstance murder).

FACTS

The jury convicted defendant of the murder of Tina Tuyet Huynh committed during a robbery. Huynh died after she held onto the side of a speeding car (in which defendant was a passenger) and was dragged by the car for several blocks. Eventually, Huynh fell to the street and died of blunt force trauma caused by the fall.

In a police interview, defendant recounted the scam drug deal that led to Huynh's death. According to defendant, Lynn Quach picked him up in her car and they drove to a park. There, Quach stopped her car behind a white Acura in which a lone man was sitting. Huynh was there to pick up 2,000 pills of Ecstasy she wanted to buy from Quach and defendant. Quach asked Huynh if she had the money. Huynh replied she had about $4,000, but demanded to see the Ecstasy. Defendant did not have any Ecstasy, but he needed money to pay his bills, so he pretended to have the pills. Huynh showed defendant the money twice. The second time, defendant "took it." He "grabbed the money real" quick. Quach drove off, but Huynh "was hanging on" the car and cursing, "Motherfuckers." The Acura chased Quach's car. Quach drove up and down a few streets. Huynh "was hanging on to a door." She had "already let go of the money a while ago." Defendant held onto Huynh's hand and told Quach to stop so Huynh could "get off." Huynh's purse was hanging on the mirror. At some point, defendant grabbed the purse "real quick" and tossed it in the back of Quach's car. Defendant had his gun. Quach said, "Hey, get her off." Quach wanted defendant to scare Huynh off the car with his gun. According to defendant, he refused to do so, saying, "That's stupid." But, while Huynh was hanging on the car, defendant fired a shot up in the air. At some point, Huynh "let go" of the car. Quach and defendant "[k]ept on going." With Huynh off the car, the Acura rammed Quach's car — first, its rear bumper and then both of its sides. Defendant shot his gun four more times to scare the driver of the other car; defendant made it look like he was pointing, but he was pointing up.

3

A witness saw Quach's car traveling at around 70 miles per hour with what appeared to be a person on the side of the car.

Huynh's boyfriend, Truong Pham, was driving the Acura. He phoned 9-1-1 and said he had "been shot at." He said he rammed the other car to try to throw off the shooter's aim or knock the gun out of his hand. Pham said that "they snatched" his girlfriend's purse, his "girlfriend tried to take it back and it was hanging out of the car, on the side of the car," and "she was hanging on for her life, on the side of the vehicle." Pham said "they" shot at his girlfriend, but he did not know "if she got hit or not" or whether "they tried." Pham did not know "if they shot her and she fell down." They had fired "a couple of shots" at Pham, but "totally missed" him.

An officer driving on patrol saw a vehicle chasing another vehicle and pulled over the lead vehicle whose bumper was dragging on the ground. Quach was the driver and defendant was the passenger. "Quach was extremely nervous, hands shaking; [defendant] was relatively calm . . . ." Quach had a red baseball cap on her lap and a red bandana in her back pocket.

Huynh's body was found face down in the street. Clumps of hair were "strewn around her, her clothes were torn up, she was really dirty." "Her face was swollen, bruised; her skin was ripped off; [she had] severe road rash on her back; . . . there was hardly any skin left on the heels of her feet." Paramedics performed CPR on her. She was unresponsive, had no pulse, and had suffered major head injuries. She was transported to the hospital. No gunshot wounds or gun residue were found on her body.

A search of Quach's car uncovered a firearm and a collapsible baton under the center console, an envelope containing cash, a yellow purse on the floorboard behind the driver's seat, and a bag of candies removed from their wrappers.

A search of Pham's Acura uncovered a bullet hole near the front passenger headlight and a bullet in the car.

4

Other evidence found on the streets on which the chase had taken place included (1) Smarties candy wrappers, (2) a pair of slippers, (3) a small puddle of blood, (4) a lighter, (5) two clumps of hair, (6) a pile of clothing consisting of a robe, a t-shirt, and some pajama shorts, (7) red fibers from the robe, and (8) two shell casings.

DISCUSSION

*Substantial Evidence Supports the Murder and Attempted Murder Convictions and Gang Enhancements*

Defendants challenge the sufficiency of the evidence to support the murder and attempted murder convictions and the associated gang enhancements. We address each challenge individually below, but first summarize the substantial evidence standard of review. Under that standard, we "review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict — i.e., evidence that is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*Ibid.*) "'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) "The same standard governs in cases where the prosecution relies primarily on circumstantial evidence." (*Zamudio*, at p. 357.)

*Substantial Evidence Supports the Murder Conviction*

The prosecution elected a robbery-murder theory of murder, and the court instructed the jury on robbery and felony murder accordingly. On appeal defendant challenges the sufficiency of the evidence to show he committed robbery. He argues the prosecution failed to present substantial evidence he (1) personally applied force or fear to Huynh, or (2) intended to aid or abet Quach's application of force to Huynh.

A killing committed in the perpetration of robbery is first degree murder. (§ 189.) Under the felony-murder doctrine, the defendant must have intended to commit robbery at the time of the killing. (*People v. Anderson* (2006) 141 Cal.App.4th 430, 446.)

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force *or* fear." (§ 211, italics added.) The "force" required for robbery must be at least "a quantum more than that which is needed merely to take the property from the person of the victim." (*People v. Wright* (1996) 52 Cal.App.4th 203, 210.) The force must be """"sufficient to overcome the victim's resistance . . . ."""" (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1259.) Whether a defendant applied sufficient force "is a question of fact to be resolved by the jury taking into account the physical characteristics of the robber and the victim." (*Wright*, at p. 210.) "A shove by a defendant who is larger or stronger than his victim may lead a jury to find that the shove amounted to the necessary 'force.'" (*People v. Mungia* (1991) 234 Cal.App.3d 1703, 1709.) "The force need not be applied directly to the person of the victim," but can instead be applied to the object in the victim's possession. (*Wright*, at p. 210.) The jury decides whether a defendant applied sufficient force when "'[g]rabbing or snatching property from the [victim's] hand . . . .'" (*People v. Morales* (1975) 49 Cal.App.3d 134, 139; see, e.g., *People v. Roberts* (1976) 57 Cal.App.3d 782, 787 [evidence that victim's purse was grabbed with such force that the handle broke supported jury's implied finding of

requisite force], overruled on another point in *People v. Rollo* (1977) 20 Cal.3d 109, 120, fn. 4, in turn superseded by statute as stated in *People v. Olmedo* (1985) 167 Cal.App.3d 1085, 1095-1096; *People v. Church* (1897) 116 Cal. 300, 304 [based on evidence defendant grabbed gold watch and chain from victim, jury could have found the defendant guilty of grand larceny, instead of robbery, if the jury "saw fit"].)

The crime of robbery continues during asportation, i.e., during the carrying away of the property to a place of temporary safety. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165.) Given the continuing nature of the crime, the force or fear element of robbery is met when the perpetrator uses force or fear (1) to initially acquire the victim's property and/*or* (2) to retain or escape with it. (*Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 222.)

Here, substantial evidence supports the jury's finding defendant committed robbery either as a direct perpetrator or as an aider and abettor. His act of firing one shot from his gun while Huynh was hanging onto the car (and before Pham began ramming Quach's vehicle) is substantial evidence defendant *directly* applied fear to Huynh with the intent of scaring her off the car and keeping her cash and her purse. The jury was entitled to reject defendant's statement he refused Quach's demand that he scare Huynh off the vehicle.[3]

Furthermore, the evidence was overwhelming that *Quach* committed robbery and that defendant *aided and abetted* the crime. Quach, in order to retain and escape with the stolen cash, applied force against Huynh by driving while the victim hung onto the car. The robbery committed by Quach continued after Huynh fell off the

---

[3] Defendant argues that the Attorney General in her respondent's brief conceded that defendant did not personally commit robbery by applying force to Huynh or by shooting *at Pham*. The Attorney General, however, never conceded that defendant applied no *fear* to Huynh. Indeed, the Attorney General did not concede that the initial taking was a theft, as opposed to robbery, but merely stated, "*Even* viewing the incident as a theft initially . . . ." (Italics added.)

car, as Quach attempted to escape with the cash. Defendant aided and abetted Quach's commission of robbery by firing a gunshot while Huynh hung onto the car and then firing four shots to stop Pham's pursuing vehicle.

### *Substantial Evidence Supports the Attempted Murder Conviction*

Defendant contends the evidence does not support a finding he intended to kill Pham, "as opposed to scaring him off the chase." He argues he had no motive to kill Pham and that his refusal to shoot Huynh demonstrates he was not "willing to kill to get himself out of his situation."

The mens rea required for attempted murder differs from that necessary for murder. Murder requires a mental state of *either* express malice (i.e., intent to kill) *or* implied malice (i.e., conscious disregard for life). (*People v. Stone* (2009) 46 Cal.4th 131, 139 (*Stone*).) For attempted murder, however, only express malice (i.e., intent to kill) will suffice. (*Ibid.*)

Evidence of motive may be probative of intent to kill, but is not required to establish such intent. (*People v. Smith* (2005) 37 Cal.4th 733, 741.) Intent to kill may be inferred from the defendant's acts and the circumstances of the crime, since there is "'rarely direct evidence of a defendant's intent.'" (*Ibid.*) When a victim escapes death due to the shooter's poor marksmanship, the shooter may still harbor a culpable state of mind. (*Ibid.*)

The evidence that (1) defendant fired five shots, (2) one bullet hit the front of Pham's car, and (3) Pham rammed Quach's vehicle to try to throw off the shooter's aim, supports the jury's finding defendant intended to kill Pham. Furthermore, contrary to defendant's assertion, the evidence also supports a finding he was motivated to kill Pham to eliminate a witness and to enable Quach and defendant to escape with Huynh's money and purse.

8

*Substantial Evidence Supports the Gang Enhancements*

Section 186.22, subdivision (b)(1)(C) requires the court to sentence a defendant to an additional consecutive term of 10 years if he or she is convicted of a violent felony (§ 667.5, subd. (c)) "committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)). Defendant contends the evidence was insufficient to show he committed the murder and attempted murder for the benefit of or in association with a gang. Rather, he asserts the evidence showed he "had a purely personal motive and stole the money to benefit himself" because he "needed the money to pay his bills."

On the date of the incident, defendant and Quach were active participants in H-Group (or Hitman Group), an Asian criminal street gang. H-Group's gang color is red. The primary activities of H-Group are robbery, sales of Ecstasy and marijuana, and assault with deadly weapons. H-Group participants commit crimes with their fellow gang members. The gang expert testified that gang participants generally plan crimes like robberies and drug sales in advance and coordinate individual roles. In response to a hypothetical question, he opined the crime was committed for the benefit of a gang because there was a monetary gain and the robbery bolstered the gang's reputation since one of its primary activities is robbery. He opined the crime was committed in association with the gang because defendant committed the crime with a known, trusted associate of the gang.

Thus, as in *People v. Albillar* (2010) 51 Cal.4th 47, 61-62, defendant and Quach committed the offenses in concert, actively assisted each other in committing these crimes, and relied on each other's cooperation. There was thus substantial evidence they acted in association with the gang. (*Id.* at p. 62.) The record also supports the jury's finding the crimes were committed to benefit H-Group. "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be

9

sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22[, subdivision] (b)(1)." (*Id.* at p. 63.)  Defendant committed robbery, one of H-Group's primary activities, and thereby enhanced the gang's reputation as well as his own.

*The Court Did Not Err by Refusing to Instruct the Jury on Involuntary Manslaughter*

Defendant contends the court erred by failing to instruct the jury on involuntary manslaughter as a lesser included offense of murder on the theory that Huynh's death occurred during defendant's commission of grand theft rather than robbery.

After the close of evidence, defense counsel requested an instruction on involuntary manslaughter as a lesser included offense of murder.  The prosecutor argued such an instruction would be legally incorrect, as well as prejudicial to the People.  The prosecutor stated that involuntary manslaughter is not a lesser included offense of *felony murder*, and pointed out that, although the People had charged defendant with a "straight" section 187 murder, the prosecution had made it clear from the start of the case that they were proceeding on a theory of felony murder, which requires no particular mental intent or state of mind.  The court referred to the bench notes to CALCRIM No. 580 on involuntary manslaughter, which state:  "The court has a *sua sponte* duty to instruct on involuntary manslaughter as a lesser included offense of murder when there is sufficient evidence that the defendant lacked malice."  The court concluded that because malice is *not* an element of felony murder, lack of malice would not reduce the offense to involuntary manslaughter in this case.  Accordingly, the court did not instruct the jury on involuntary manslaughter.

A trial court bears a sua sponte duty to instruct the jury on lesser included offenses if there is substantial evidence the defendant committed only the lesser crime. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149, 162.)  It is well established that

10

involuntary manslaughter is a lesser included offense of murder predicated on malice, either express or implied. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145.) But whether involuntary manslaughter is a lesser included offense of *felony murder* (which has no malice requirement (*People v. Robertson* (2004) 34 Cal.4th 156, 164, disapproved on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1200) is less clear.[4]

In any event, as discussed earlier in this opinion, the evidence was overwhelming that defendant committed felony murder. There was no substantial evidence he committed only the lesser crime of involuntary manslaughter, so as to trigger a sua sponte duty for the court to instruct on that offense. "A trial court must instruct the jury sua sponte on an uncharged offense that is lesser than, and included in, a greater offense with which the defendant is charged 'only if [citation] "there is evidence"' [citation,] specifically, '*substantial* evidence' [citations] , '"which, if accepted . . . , would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*.'" (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

---

[4] The parties have not directed us to, nor have we found, any cases deciding whether involuntary manslaughter is a lesser included offense of felony murder. Many cases have briefly mentioned, without deciding, the issue of whether second degree murder is a lesser included offense of first degree felony murder. Our Supreme Court has "concluded that first degree premeditated murder is not a lesser included offense of first degree felony murder, but ha[s] left open the question as to second degree murder." (*People v. Wilson* (2008) 43 Cal.4th 1, 16, fn. 5; see also *People v. Taylor* (2010) 48 Cal.4th 574, 623; *People v. Huynh* (2012) 212 Cal.App.4th 285, 314.) More recently, our Supreme Court has observed that, although it declined in *People v. Valdez* (2004) 32 Cal.4th 73, 114–115, footnote 17, to determine whether second degree murder is a lesser included offense of first degree felony murder, it did note in *Valdez* (*id*., at p. 140 (dis. opn. of Chin, J.)) "the *Attorney General's contention* that second degree murder is *not* a lesser included offense of first degree felony murder, because malice is an element of second degree murder, but is not an element of first degree felony murder." (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1328-1329, first set of italics added.) Reiterating the point, the *Castaneda* court noted that the defendant there did "not address . . . how second degree murder, which requires malice, can be a lesser included offense of first degree felony murder, which does not require malice . . . ." (*Id.* at p. 1329.)

11

*Sentencing Errors*

Defendant contends, and the Attorney General agrees, that the court erred by imposing, as to count 1, a consecutive 10-year gang enhancement under section 186.22, subdivision (b)(1)(C), instead of the 15-year parole minimum mandated by section 186.22, subdivision (b)(5). It is true the court erred. In *People v. Lopez* (2005) 34 Cal.4th 1002, 1004, our Supreme Court stated, "[S]ection 186.22, subdivision (b) establishes alternative methods for punishing felons whose crimes were committed for the benefit of a criminal street gang. Section 186.22, subdivision (b)(1)(C) . . . imposes a 10-year enhancement when such a defendant commits a violent felony. Section 186.22(b)(1)(C) does not apply, however, where the violent felony is 'punishable by imprisonment in the state prison for life.' [Citation.] Instead, section 186.22, subdivision (b)(5) . . . applies and imposes a minimum term of 15 years before the defendant may be considered for parole."

Defendant further contends, and the Attorney General agrees, that the court erred by refusing to consider striking the gang enhancement to count 2.[5] They are right. The court erroneously believed it had no discretion to strike the gang enhancement. Section 186.22, subdivision (g) accorded the court that discretion: "[T]he court may strike the additional punishment for the enhancements provided in this section . . . in an unusual case where the interests of justice would best be served, if the court specifies on the record and enters into the minutes the circumstances indicating that the interests of justice would best be served by that disposition."

Finally, the Attorney General correctly points out the court erroneously imposed *indeterminate* terms of 20 years to life on the firearm enhancements to counts 1

_____

[5] Defendant also makes this argument with respect to count 1, but "a trial court may not strike or otherwise refuse to impose the *alternate penalty* prescribed by section 186.22, subdivision (b)(5) under the provision authorizing a court to 'strike the *additional punishment for the enhancements* provided in this section.'" (*People v. Campos* (2011) 196 Cal.App.4th 438, 449.)

12

and 2.  Under section 12022.53, subdivision (c), the proper punishment for each enhancement is a 20-year *determinate* prison term.

DISPOSITION

The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation, to reflect a determinate 20-year prison term on each firearm enhancement to counts 1 and 2, and to correct the associated court minutes.  We further direct the trial court to (1) strike the 10-year term for the gang enhancement to count 1 and impose the 15-year parole minimum on count 1, and (2) conduct a new sentencing hearing to determine whether to exercise its discretion to decide whether to strike the gang enhancement to count 2.  In all other respects, the judgment is affirmed.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.

13